United States District Court
for the
Southern District of Florida

| | | |
|---|---|---|
| Big Ligas, LLC, Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 20-23719-Civ-Scola |
| | ) | |
| Helen Yu, Defendant. | ) | |

### Omnibus Order

This matter is before the Court upon the Defendant's motion to dismiss and the Plaintiff's motion to strike certain portions of the Defendant's reply in further support of her motion to dismiss. On April 7, 2021, the Defendant filed a notice with the Court indicating she no longer wished to contest this Court's jurisdiction or the question of whether venue was proper in the Southern District of Florida, and therefore, the Court does not reach these arguments as they have been withdrawn without any opposition from the Plaintiff. For the reasons stated below, the Court **grants** the Defendant's motion to dismiss. (**ECF No. 17**.)

### 1. Background

The Plaintiff, Big Ligas, LLC ("Big Ligas") is a Florida limited liability company, with three members, each of whom own one-third of the shares in the Company. The members are Daniel Echavarria, also known as Ovy; Christian Andres Salazar; and Paulo Londra. Ovy and Salazar are the managing members of Big Ligas. (ECF No. 11, at ¶ 1.) The Defendant, Helen Yu, is an entertainment attorney who represents Paulo Londra. (ECF No. 11, at ¶ 2; ECF No. 17, at 1.)

Paulo Londra is an Argentinian "rapper and reggaeton/trap singer." (ECF No. 11, at ¶ 7.) In 2017, Londra was introduced to Ovy and Salazar who decided to help Londra launch his career as a singer and songwriter. (ECF No. 11, at ¶¶ 8-10.) Accordingly, on February 21, 2018, Londra, Ovy, and Salazar entered into a "Deal Memorandum", which the Plaintiff provided as Exhibit A to its complaint. (ECF No. 11-1.)[1] Pursuant to this agreement, the parties agreed to "foster and pursue the development and commercial exploitation of [Londra's] Services and Works" where "Services" is defined to mean Londra's

---

[1] The Court may consider exhibits attached to the complaint at the motion to dismiss stage. *See Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019) ("The Civil Rules provide that an attachment to a complaint generally becomes 'part of the pleading for all purposes,' including for a ruling on a motion to dismiss.") (quoting Fed. R. Civ. P. 10(c)).

work "as an entertainer, recording artist, songwriter, live performer, celebrity and public figure" and "Works" is defined to mean "musical compositions, recordings, performances, endorsements, sponsorships and other uses of [Londra's] name and likeness in connection therewith." (*Id.*) The Plaintiff alleges that pursuant to this agreement, Londra agreed to provide his "exclusive services to [Big Ligas]" during the "Term and throughout the Territory" of the agreement. (*Id.*) The term of the agreement was to extend for a period of three years, and then automatically renew for a period of one year unless Londra, Salazar or Ovy informed the other members of Big Ligas of their desire to end the term. (*Id.*) However, if during term of the agreement Big Ligas entered into an "exclusive recording agreement with a Major Label" Londra could not terminate the "Term" of the agreement until six months following the expiration of any such deal. (*Id.*) The "Territory" of the Deal Memorandum is "the universe." (*Id.*) Finally, the Deal Memorandum purports to make Big Ligas the owner of all "Works and copyrights and all other neighboring and intellectual property rights therein" including "pre-existing Works" in perpetuity. (*Id.*) Under the Deal Memorandum, Ovy and Salazar were designated as Big Ligas's "managing member[s] or executive officer[s] . . . with exclusive authority to sign agreements and otherwise act on its behalf" including the authority to enter into "recording agreements with third party record labels." (*Id.*) Under the Deal Memorandum, certain aspects of Londra's relationship with Big Ligas required mutual assent and approval of all parties. (*Id.*) Londra also executed a "Songwriter Agreement" with Big Ligas pursuant to which he agreed to render his exclusive services to Big Ligas for a term that would be coterminous with the Deal Memorandum. (*Id.*)

Following the release of several hits, in the spring of 2018 Big Ligas began discussions with several record labels and music publishing companies, including Warner, Sony Music Latin, and Universal Music Latin Entertainment, regarding Paulo's singing and songwriting services. (ECF No. 11, at ¶¶ 28-29.) Big Ligas pursued an offer from Warner, and in November 2018, Big Ligas and Londra discussed Warner's offer. (*Id.* at ¶ 30.) On December 11, 2018, Big Ligas entered into a "Recording License Agreement" with Warner pursuant to which Londra would record his first album. (*Id.* at ¶ 32.) The Plaintiff notes that this agreement was executed by Warner and Big Ligas because the Deal Memorandum "gives Big Ligas the exclusive right to Paulo's recording services." (*Id.*) On May 23, 2019, Londra released his debut album, *Homerun*, ranking number 10 on the Billboard Latin Rhythm Albums chart. (*Id.* at ¶¶ 33-34.) Warner and Big Ligas entered into a "Second Album Amendment" for a second album, with Big Ligas and Warner as signatories. (*Id.* at ¶ 35.) In the spring of 2019, Big Ligas began pursuing a deal "with major music publishers," resulting

in offers from several publishers, including Kobalt Music Publishing ("Kobalt"). (*Id.* at ¶¶ 36-37.) As with the Warner agreements, any agreement with Kobalt would be signed Big Ligas and Kobalt. (*Id.* at ¶ 36.)

Turning to the meat of the instant dispute, in 2019, amidst negotiations with Kobalt and with Warner regarding Londra's second album, Londra hired Helen Yu as his attorney. (*Id.* at ¶ 39.) The Plaintiff states Ms. Yu has acted in bad faith by excluding Big Ligas from certain deals "by falsely claiming that only she had the authority to negotiate for Paulo and that big Ligas did not" and that she "falsely claimed that she and/or Paulo owned the copyrights that are in fact owned by Big Ligas." (*Id.* at ¶ 45.) According to the Plaintiff, Ms. Yu begin interfering with Big Ligas's contractual rights for "her own pecuniary benefit as well as for Paulo's" and that this was "done purposefully to harm Big Ligas," including by depriving Big Ligas of its right to enter into third-party agreements with record labels and publishers for Londra's services (*Id.* at ¶¶ 40-41.) For example, Big Ligas states that in December 2019, Yu contacted Warner to negotiate an extension of Big Ligas's agreement with Warner, which Big Ligas says only it had a right to do, and falsely stated that Big Ligas did not have the authority to negotiate or handle any agreements for Londra. (*Id.* at ¶ 42.) Big Ligas also states that Ms. Yu tried to replace Big Ligas's agreement with Warner pursuant to which Londra would record a second album. (*Id.*) Big Ligas claims that because of Yu's interference, the agreement ultimately entered into between Big Ligas and Warner in March 2020 was less beneficial to Big Ligas than it otherwise would have been. (*Id.* at ¶ 43.)

Big Ligas also states that Ms. Yu interfered with its relationship with Kobalt. (*Id.* at ¶ 44.) Big Ligas states that after it had obtained an offer from Kobalt, Ms. Yu "unilaterally sen[t] Kobalt a counterproposal in November 2019—excluding Big Ligas entirely from the negotiations" and "instructed Kobalt not to enter into an agreement with Big Ligas" which ultimately prevented Big Ligas and Kobalt from entering into an administration deal. (*Id.*)

As part of her interference, Big Ligas contends that Ms. Yu has falsely represented that she was authorized to deliver Londra's "recording artist and songwriting services . . . when in fact, any compositions or recordings created under publishing or record deals not authorized by Big Ligas, including those negotiated by Yu, are not commercially exploitable without Big Ligas'[s] authorization, under Paulo's name or otherwise." (*Id.* at ¶ 50.) Moreover, Big Ligas states that Yu has no authority to utilize Londra's name and likeness to promote his services as all rights to Londra's name and likeness belong to Big Ligas under the Deal Memorandum and associated Songwriter Agreement.

Based on the above, Big Ligas has brought suit against Londra's attorney, Helen Yu, alleging that Yu has tortiously interfered with Big Liga's

business or contractual relationships (Count I) and for false advertising and trademark infringement under the Lanham Act, 15 U.S.C. 1051, *et seq.* (Counts II and III).

## 2. Legal Standard

### A. Rule 12(b)(6)

A court considering a motion to dismiss, filed under Federal Rule of Civil Procedure 12(b)(6), must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although a pleading need only contain a short and plain statement of the claim showing that the pleader is entitled to relief, a plaintiff must nevertheless articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)) (internal punctuation omitted). A court must dismiss a plaintiff's claims if she fails to nudge her "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

## 3. Analysis

### A. Count I, Tortious Interference

In her motion to dismiss, Londra's attorney, Helen Yu, states Count I of the Plaintiff's complaint seeking relief for tortious interference must be dismissed because the Plaintiff admits that Ms. Yu is Londra's attorney and it is impossible for Ms. Yu to tortiously interfere with any agreement or contractual relationship which Londra has a beneficial or economic interest in as a matter of law. The Defendant also argues that because Big Ligas requires Londra's approval for Londra's services, Big Ligas does not have the exclusive authority it contends to enter into agreements relating to Londra's recording and songwriting services.

Under Florida law, the elements for a claim of "tortious interference with a contract or business relationship are: (1) the existence of a business relationship, not necessarily evidenced by an enforceable contract, under which the plaintiff has legal rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the

interference." *Palm Springs Mile Associates, Ltd. v. T-Mobile USA, Inc.*, No. 20-22481-Civ, 2020 WL 7711687, at *3 (S.D. Fla. Dec. 29, 2020) (Scola, J.). The Defendant argues that

As an initial matter, the Court notes that the Plaintiff has asked the Court to strike the Defendant's arguments from her reply brief insofar as they argue Londra has a "right of approval" over Big Ligas's deals or contracts with third parties as such argument was not raised in the Defendant's initial motion to dismiss. The Court denies the Plaintiff's request that the Court strike this portion of the Defendant's reply brief as the Court finds Ms. Yu's brief, with respect to this issue, is appropriately limited to rebuttal of matters raised in the Defendant's opposition, consistent with Local Rule 7.1(c). *See Giglio Sub s.n.c. v. Carnival Corp.*, No. 12-21680-CIV, 2012 WL 4477504, at *2 (S.D. Fla. Sept. 26, 2012) (Rosenbaum, J.) ("A significant difference exists, however, between new arguments and evidence, on the one hand, and rebuttal arguments and evidence, on the other… under Local Rule 7.1(c).").

Turning to the substance of the Plaintiff's tortious interference claim, the Court agrees with the Defendant that a claim for tortious interference cannot stand as alleged because of Londra's contractual right to approve or disapprove of Big Ligas's deals with record labels and music publishers. While the Deal Memorandum does give the Plaintiff the ability to "enter into recording agreements with third party record labels respecting [Londra's] exclusive recording services" such that Big Ligas has "exclusive authority to sign agreements and otherwise act on [Big Ligas's] behalf," that authority is not without limitation. (ECF No. 11-1.) The Deal Memorandum also recognizes that Big Ligas requires Londra's services and therefore notes that Londra's assent will be required for certain of Big Ligas's activities. For instance, the Deal Memorandum states that its business requires Londra's creation of music "including such specific elements as you and we may *agree are necessary*, including without limitation, [Londra's] performance . . . as you and we *shall mutually determine* in our good faith business judgment. [Big Ligas] may distribute, license, sell or otherwise exploit Goods subject to *your and our mutual approval*." (ECF No. 11-1 (emphasis added).) Accordingly, it appears that Londra's assent is required for many of Big Ligas's business activities as set forth in the Deal Memorandum.

In consideration of the Deal Memorandum's language, the Court agrees that Big Ligas does not have the exclusive authority it suggests it has in its complaint and briefing. The Court finds persuasive *Genet v. Annheuser-Busch, Inc.*, 498 So. 2d 683 (Fla. 3d DCA 1986). In *Genet*, the Third District Court of Appeals noted that under Florida law, there is no cause of action for tortious interference where the relationship between two parties, such as Big Ligas and

Warner or Kobalt, is "specifically conditioned upon [another party's] approval." *Id.* at 684. Londra's actions, through his attorney, Helen Yu, appear therefore to be completely within the scope of the Deal Memorandum. As the Defendant points out in her briefing, without Londra's services, any deal between Big Ligas and any third party is essentially worthless, as "*Londra is the deal.*" (ECF No. 28, at 1 (emphasis in original).)

Even were that not the case, the Court finds that the Plaintiff would still be unable to assert a claim against Yu. Big Ligas concedes in its briefing that Londra has a "beneficial or economic interest" in deals entered into by Big Ligas, as he is entitled to distributions as set forth in the Deal Memorandum. For instance, Big Ligas is required to pay Londra for one-third of any recorded music net revenues, sixty percent of any publishing net profits and half of any other net profits. (ECF No. 11-1.) Moreover, Londra receives an additional third of any net profits over and above those net profits he receives as an artist due to his status as a member of Big Ligas. (*Id.*) While Londra may not be a signatory to the agreements with Warner or any potential agreement with Kobalt, it appears that he indisputably has an economic interest in such relationships. The Plaintiff's own complaint states that Yu's actions were taken for Londra's "own pecuniary benefit." (ECF No. 11, at ¶ 40.)

Under Florida law, "a person with any beneficial or economic interest in, or control over, a contractual relationship is not considered a stranger to the contract and therefore has a privilege to interfere in that relationship." *M & M Realty Partners at Hagen Ranch, LLC v. Mazzoni*, 982 F.3d 1333, 1339 (11th Cir. 2020). The exception to this broader privilege is the improper means doctrine. *Id.* Under this doctrine an individual can be held liable for tortious interference with a contract if they are found to have been acting with an ulterior motive. *Bray & Gillespie Mgmt. LLC v. Lexington Ins. Co.*, 527 F. Supp. 2d 1355, 1367-68 (M.D. Fla. 2007). An individual's agent, by extension, "can be considered a third party to the contract for the purposes of a tortious interference claim if the agent acts outside the scope of agency or is not acting in the principal's best interests." *Id.* at 1368. While Big Ligas argues Yu is liable as Londra's attorney due to her alleged interference with the Warner and Kobalt agreements, it appears that Big Ligas's claim lies with Londra and not with Yu. As plead, the Plaintiff does not state that Yu acted outside the scope of her agency with respect to Londra, that Londra did not endorse her actions, or that she was failing to act in Londra's interests, but rather, the complaint suggests that Ms. Yu was taking actions for the benefit of her client that were in apparent tension with the interests of Big Ligas.

As in *Palm Beach County Health Care Dist. v. Professional Medical Educ., Inc.*, the Court finds that dismissal of the tortious interference claim against

Ms. Yu is justified and in accord with the purpose of claims for tortious interference. 13 So. 3d 1090, 1906 (Fla. 4th DCA 2009). As the Fourth District Court of Appeals explained, the tort of tortious interference "recognizes that economic relations are entitled to freedom from unreasonable interference" as the point of such relationships is to advance the interests of the parties involved. *Id.* Such claims are intended to protect the parties of an agreement from interference by outsiders who would not otherwise be liable. *Id.* However, where the claim involves an interested third-party, the contractual interests intended to be protected "*include* the interests of the third-party with respect to the contract." *Id.* (emphasis in original). "An interested third-party accused of tortious interference is essentially 'interfering' with its own interests. This is not interference; it is freedom of contract." *Id.* That Londra, through his attorney Ms. Yu, has allegedly interfered with Big Ligas's relationships does not give rise to a claim for tortious interference because Londra's economic interests are intertwined with the interests of Big Ligas, as memorialized in the Deal Memorandum. His actions, and Ms. Yu's associated actions, may be frustrating to Big Ligas, but they do not amount to "interference," they are simply "freedom of contract." *Id.*

### B. Counts II-III, Lanham Act

The Court now turns to the Plaintiff's Lanham Act claims. First, the Plaintiff claims that Ms. Yu violated the false advertising provisions of the Lanham Act, 15 U.S.C. § 1125(a), by informing third parties of her authority to "negotiate and act on behalf of 'Paulo Londra' with respect to his recording artist and songwriting services." (ECF No. 11, at ¶ 66.) The Plaintiff alleges that Paulo Londra is a stage name created by Big Ligas, though the Plaintiff does concede that "Paulo Londra" is also Londra's name by birth. (*Id.*, at ¶ 66 n.9). The Plaintiff further states that when Yu made these statements to third parties such as Warner and Kobalt, she did so knowing her statements were "false and deceptive" due to Big Ligas's "exclusive rights under the Deal Memo and Songwriter Agreement." (*Id.* at ¶ 70.)

The Plaintiff advances similar allegations in support of its claim for trademark infringement. The Plaintiff states that Yu used Londra's "name and likeness . . . to promote his recording services to Warner (and others) and his songwriting services to Kobalt (and others), without Big Ligas'[s] approval or authorization." (*Id.* at ¶ 84.) The Plaintiff alleges that Yu's misuse of Londra's name and likeness has confused third parties and has interfered with Big Ligas's ability to control the quality of goods and services provided by Londra.

In response to the Plaintiff's allegations, the Defendant states that her conduct is justified because "she actually *is* Mr. Londra's counsel" and by identifying her client by his given name, is engaged in "classical fair use" because she is not using the name Paulo Londra in the trademark sense, but only to identify her client and describe his relationship to her. (ECF No. 17, at 16 (emphasis in original).)² With respect to the Plaintiff's false advertising claim, Yu argues that Big Ligas's claim must fail because Yu is not a competitor with Big Ligas, there has been no impact on Big Ligas's business reputation or loss to present and future sales; and Big Ligas has failed to allege a "significant portion" of reasonable customers were actually deceived by Yu's representations. To prove classic fair use, which is an affirmative defense, the Court must ask whether a defendant used the mark in question "(1) other than as a mark, (2) in a descriptive sense, and (3) in good faith." *Kilowatts Elec. Supply, Corp. v. Kilowatt Depot Corp.*, No. 12-24244-Civ, 2013 WL 12094324, at *2 (S.D. Fla. Feb. 8, 2013) (Ungaro, J.). The question of whether an action was taken in good faith turns on "whether the alleged infringer intended to trade on the good will of the trademark owner by creating confusion as to the source of the goods or services." *Int'l Stamp Art, Inc. v. U.S. Postal Serv.*, 456 F.3d 1270, 1274 (11th Cir. 2006).

### (1) False Advertising

To state a claim for false advertising under the Lanham Act, a plaintiff must allege that "(1) the advertisements of the opposing party were false or misleading; (2) the advertisements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on purchasing decisions; (4) the misrepresented product or service affects interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false advertising." *Wyndham Vacation Ownership, Inc. v. US Consumer Attys., P.A.*, No. 18-81251-Civ, 2019 WL 7837887, at *6 (Reinhart, Mag. J.). The Plaintiffs argue they have met each of these elements. (ECF No. 25, at 10-11.)

The Court agrees with the Defendant that the Plaintiff has failed to state a claim for false advertising under the Lanham Act. Once again, the Plaintiff has conceded that Ms. Yu is Londra's attorney. (ECF No. 11, at ¶ 39 (Paulo . . . decided to hire another attorney, Helen Yu, sometime in 2019.").) That Ms. Yu

---

² In its motion to strike, the Plaintiff argues that, for the first time in her reply, Yu argues that her use of Londra's name "constitutes 'nominative fair use'." (ECF No. 35, at 3.) In her response to the Plaintiff's motion, Yu clarifies that her argument "is and remains that 'Ms. Yu's identification of her client by his name constitutes a classic fair use." (ECF No. 40, at 4.) As the Defendant is not arguing nominative fair use, the Court finds the Defendant's arguments asking the Court to strike arguments advancing nominative fair use arguments to be moot.

contacted third parties and stated she is Londra's attorney with authority to negotiate on his behalf is not a false or misleading statement insofar as Ms. Yu was acting on behalf of her client, Londra. While the Deal Memorandum states that Big Ligas has the "power to . . . authorize others to[] sell, license, or otherwise exploit" Londra's services and that Ovy and Salazar, as Big Ligas's "managing member or executive officer, as applicable" have the "exclusive authority to sign agreements and otherwise act on [Big Ligas's] behalf," these provisions do no otherwise limit Ms. Yu from taking actions at the direction of her client, regardless of whether those actions are in conflict with the Deal Memorandum and affiliated agreements. As above, it strikes the Court that Big Ligas's dispute here is with Londra, who in the view of the Plaintiff is taking actions in violation of the parties' agreements. Accordingly, the Court finds that Ms. Yu's statements that she represents Paulo Londra and has authority to negotiate on his behalf are not false or misleading and therefore the Plaintiff cannot state a claim for false advertising under the Lanham Act.

### (2) Trademark Infringement

The Court now turns to the Plaintiff's allegations of trademark infringement. To state a claim for trademark infringement under the Lanham Act, a Plaintiff must allege that "(1) that it had trademark rights in the mark or name at issue and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." *D.B.C. Corp. v. Nucita Venezolana, C.A.*, 464 F. Supp. 3d 1323, 1329 (S.D. Fla. 2020) (Moreno, J.).

In its briefing, the Plaintiff concedes that "[t]o be sure, Yu is free to use Londra's name to refer to him, and to communicate to others that she is his attorney." (ECF No. 25, at 15.) The Plaintiff states, however, that Yu cannot use Londra's name in "bad faith to state, suggest, imply, or otherwise indicate that the recording artist and songwriting services that she purports to deliver from Paulo Londra are authorized or genuine." (*Id.*) The Plaintiff's trademark infringement claim suffers from the same deficiency as its false advertising claim. The Plaintiffs state in their complaint that Londra's stage name and given name are identical—both are Paulo Londra. Yu states in her motion that she has utilized Londra's name *only* to identify him as her client and to describe his relationship to her. (ECF No. 17, at 16.) The first step of a trademark infringement claim is to "demonstrate an unauthorized 'use' of the plaintiff's mark in commerce" and the Plaintiff's allegations do not prove that Ms. Yu used the Plaintiff's mark in commerce by referring to and describing her

relationship with her client by using his given name. *D.B.C. Corp.*, 464 F. Supp. 3d at 1329.

Even assuming Big Ligas could prove trademark infringement, the Defendant's fair use defense defeats the Plaintiff's claim. "Under the fair use doctrine, 'the holder of a trademark *cannot* prevent others from using the word that forms the trademark in its *primary* or *descriptive* sense" as only the "second, new 'trademark' meaning of the word" is protected, but the "descriptive primary meaning is always available for use by others" and therefore the "fair use defense contemplates and tolerates some possibility of consumer confusion" between the primary and secondary meaning of a word or name. *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 612 (6th Cir. 2009) (disposing of trademark infringement claim due to fair use defense at motion to dismiss stage) (emphasis in original). The Court finds that, as Londra's attorney, Ms. Yu's use of his name to identify him as her client was other than as a mark, used in the primary descriptive sense, and was undertaken in good faith, that is without the intent to trade on the good will of Big Ligas. To the extent the use of the name Paulo Londra creates some risk of confusion, Big Ligas assumed that risk by establishing Paulo Londra, Londra's given name by birth, as his stage name. *Id* ("To the extent they cause some level of consumer confusion, [the plaintiff] assumed that risk by trademarking [an individual's] own personal last name."). The Court therefore finds that the Plaintiff's claim for trademark infringement also fails.

### 4. Conclusion

For the reasons stated above, the Court therefore **grants** the Defendant's motion to dismiss. (**ECF No. 17**.) It bears repeating that the Court is left with the indelible sense that Big Ligas's dispute is with Londra, not his agent and attorney, Ms. Yu. To the extent Ms. Yu is undertaking actions that are in tension with the Deal Memorandum or other agreements between Londra and Big Ligas, she is doing so as Londra's agent. Indeed, the Plaintiff has failed to advance any arguments suggesting that Ms. Yu is acting against the wishes of Londra. To the extent Big Ligas is upset with actions that have been taken in alleged violation of the Deal Memorandum, it seems those grievances are more appropriately actions for breach of contract. Consistent with the parties' briefing, the Court understand that there is a pending state court action pursuant to which Londra is challenging the validity of the Deal Memorandum, and it strikes the Court as more appropriate and economical that claims pertaining to Londra's rights and by extension the rights of his agents be adjudicated as part of that action, rather than in a separate forum.

The Court also **denies** the Plaintiff's motion to strike. (**ECF No. 35**.) As set forth in this order, the Court has considered only those arguments which were actually advanced by the Defendant in her reply, and which could fairly be considered in rebuttal to arguments raised by the Plaintiff in its opposition to the Defendant's motion to dismiss. For the avoidance of doubt, the Court did not rely in whole or in part on the second argument objected to by Big Ligas pertaining to a ruling entered by Judge William Thomas in *Londra v. Big Ligas*, Case No. 2020-005448-CA-01, pending in the Circuit Court for the Eleventh Judicial Circuit in and for Miami-Dade County.

The Court **denies** any pending motions, if any, **as moot**. The Clerk is directed to **close** this case.

**Done and ordered**, in Miami, Florida, on April 15, 2021.

_____
Robert N. Scola, Jr.
United States District Judge