United States District Court
for the
Southern District of Florida

| | | |
|---|---|---|
| Big Ligas, LLC, Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 20-23719-Civ-Scola |
| Helen Yu, Defendant. | ) ) | |

### Order Denying Plaintiff's Motion to Alter or Amend Judgment

This matter is before the Court upon the Plaintiff's motion to alter or amend judgment (**ECF No. 48**), pursuant to Federal Rule of Civil Procedure 59(e). The Plaintiff asks the Court to alter or amend the judgment of the omnibus order (ECF No. 46), which in relevant part granted the Defendant's motion to dismiss (ECF No. 17). In the alternative, the Plaintiff moves for leave to amend its complaint. (ECF No. 48.) The Defendant filed a response to the instant motion (ECF No. 51), and the Plaintiff filed its reply (ECF No. 54). For the reasons stated below, the Court **denies** the Plaintiff's motion and **denies** leave to amend. (**ECF No. 48**.)

1. **Legal Standard**

Rule 59(e) permits a motion to alter or amend a judgment, but only in limited circumstances—where there is "newly-discovered evidence or manifest errors of law or fact." *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007). Considering such a circumscribed purpose, "a Rule 59(e) motion cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Id.* (internal quotations omitted).

> It is an improper use of the motion to reconsider to ask the Court to rethink what the Court already thought through—rightly or wrongly. The motion to reconsider would be appropriate where, for example, the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension.  A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the Court. Such problems rarely arise and the motion to reconsider should be equally rare.

*Z.K. Marine Inc. v. M/V Archigetis*, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992) (Hoeveler, J.) (citation omitted). For these reasons, "reconsideration of a

previous order is an extraordinary remedy to be employed sparingly." *Bautista v. Cruise Ships Catering & Serv. Int'l, N.V.*, 350 F. Supp. 2d 987, 992 (S.D. Fla. 2004) (cleaned up).

Big Ligas argues that the extraordinary relief of Rule 59(e) is warranted because of a series of alleged clear errors. These errors include, among others, that the Court was "confused" regarding the elements of a cause of action and that the Court was "misled" by opposing counsel's arguments. (*See* ECF No. 48 at 5, 15.) Moreover, Big Ligas complains that the Court impermissibly weighed evidence at the motion-to-dismiss stage. (ECF No. 48 at 1.) While the parties are familiar with the facts, the Court will first briefly summarize the facts and then address each argument.

## 2. Background

Big Ligas, LLC is composed of three members, who each own one-third of the enterprise: Daniel Echavarria, Christian Andres Salazar, and Paulo Londra. (ECF No. 11-1 at § 1.) On February 21, 2018, Echavarria, Salazar, and Londra entered into a "Deal Memorandum" or "Deal Memo" (ECF No. 11-1), in which the parties agreed to pursue the "development and commercial exploitation" of Londra as a musical performer. (ECF No. 11-1 at § 1.) The Deal Memo gave Big Ligas the "exclusive right to enter into recording agreements with third party record labels respecting [Paulo's] exclusive recording services" as well as "the power to, and to authorize others to, sell, license, or otherwise exploit [Paulo's] Works." (ECF No. 11 at ¶ 15.) On December 11, 2018, Big Ligas agreed to a "Recording License Agreement" with Warner Music Latina, a publishing company. (ECF No. 11 at ¶ 32.) Following the success of Londra's first album, Big Ligas contracted with Warner for a second album and initiated discussions with Kobalt Music Publishing. (ECF No. 11 at ¶¶ 35, 38.)

In 2019, Londra hired the Defendant, Ms. Yu, as his personal attorney. (ECF No. 11 at ¶ 39.) Ms. Yu, acting for the pecuniary benefit of her client, began to discuss deals with Warner and Kobalt. (ECF No. 11 at ¶ 40.) For example, Ms. Yu worked to negotiate an extension of Big Ligas's contract with Warner and stated that Big Ligas did not have the authority to negotiate any agreements for Londra. (ECF No. 11 at ¶ 42.) Ms. Yu also attempted to negotiate a new agreement with Warner regarding Londra's services. (*Id.*) In addition, Ms. Yu attempted to unilaterally negotiate with Kobalt and, in part, prevented Big Ligas and Kobalt from entering into a contract. (ECF No. 11 at ¶ 44.) Throughout the actions described above, Ms. Yu represented that she was authorized to deliver Londra's services and that she or Londra owned certain copyrights that are owned by Big Ligas. (ECF No. 11 at ¶ 45.)

On September 4, 2020, Big Ligas sued the Defendant, alleging three counts: (1) tortious interference with Big Ligas's business or contractual relations, (2) false advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1), and (3) trademark infringement under the Lanham Act, 15 U.S.C. § 1125(a). (ECF No. 1.) Big Ligas later amended its complaint on November 25, 2020. (ECF No. 11.) The Defendant moved to dismiss the amended complaint on December 14, 2020 (ECF No. 17), which the Court granted on April 15, 2021.

### 3. Discussion

#### A. Tortious Interference with Contract

Big Ligas has failed to demonstrate clear error regarding the Court's dismissal of Count I. The Court grounded its holding on two bases: (1) that Big Ligas could not allege a claim for tortious interference, as Londra held consent rights in some of Big Ligas's activities, and (2) that Londra held a "beneficial or economic interest" in the contracts at issue and therefore he (and his agent) cannot tortiously interfere with such contracts. (*See* ECF No 46 at 5–6.)

As to the first basis, while the Court relied on various provisions of the Deal Memo that gave Londra consent rights, the fact that Londra has consent rights in some but not all provisions does not diminish Big Ligas's alleged exclusive authority over the exploitation of Londra's Works, with which is the provision that Big Ligas alleges was interfered. (ECF No. 48 at 3; ECF No. 11 at ¶¶ 14, 15 & n.5).

Nonetheless, the Plaintiff's claim for tortious interference fails because Londra has a "beneficial or economic interest" in the contracts at issue. (ECF No. 46 at 6.) Contrary to the Plaintiff's claims, such an interest did not arise out of Londra's ownership in Big Ligas, but rather his personal financial interest in the performance of the contracts at issue. (*See* ECF No. 11-1 at § 5(a)); *see also Hamilton v. Suntrust Mortg. Inc.*, 6 F. Supp. 3d 1312, 1320 (S.D. Fla. 2014) (Cohn, J.) ("[A beneficial or economic interest] includes when a defendant has a supervisory interest in how the relationship is conducted or a potential financial interest in how a contract is performed.") (cleaned up). And as Londra's agent, Ms. Yu was acting for Londra's "own pecuniary benefit" and therefore cannot be held liable for tortiously interfering with a contract in which Londra has a "beneficial or economic interest." (ECF No. 11 at ¶ 40); *cf. Bray & Gillespie Mgmt. LLC v. Lexington Ins. Co.*, 527 F. Supp. 2d 1355, 1367–68 (M.D. Fla. 2007) ("[A]n agent generally cannot be held liable for tortiously interfering with the contract of its principle.").

There are two exceptions to this rule: where an interested party acts "solely with ulterior purposes" or with "improper means." *See Salit v. Ruden,*

*McClosky, Smith, Schuster & Russell, P.A.*, 742 So.2d 381, 386 (Fla. 4th DCA 1999); *M&M Realty Partners at Hagen Ranch, LLC v. Mazzoni*, 982 F.3d 1333, 1339 (11th Cir. 2020). Big Ligas does not allege that Ms. Yu acted *solely* with ulterior motives—the Plaintiff recognizes that Ms. Yu acted for her client's "own pecuniary benefit." (ECF No. 11 at ¶ 40.) Similarly, neither does Big Ligas adequately allege that Ms. Yu acted with improper means. While the Amended Complaint contains allegations that Ms. Yu made false representations to third parties, the Amended Complaint states that Ms. Yu was acting for Londra's "own pecuniary benefit." (*Id.*) The "improper means" exception "does not affect the core rule that a tortious interference claim does not lie against an agent acting within the scope of his agency." *M&M Realty Partners*, 982 F.3d at 1340.

One point deserves more attention. The Plaintiff takes issue with the Defendant's assertion that "as Londra's lawyer, [she] was legally incapable of tortiously interfering with any agreement in which her client had a beneficial or economic interest." (ECF No. 54 at 7.) The Court does not endorse such an unyielding rule, although the Court notes that the standard is high. Under Florida law, the tort of tortious interference "recognizes that economic relations are entitled to freedom from unreasonable interference . . . by outsiders, who would not be liable otherwise for breach." *Palm Beach Cnty. Health Care Dist. V. Pro. Med. Educ., Inc.*, 13 So.3d 1090, 1095 (Fla. 4th DCA 2009). But so-called "interested third parties"—those who have "any beneficial or economic interest in" a contract—are permitted to interfere in order to "protect their own economic interests." *M&M Realty Partners*, 982 F.3d at 1339. This protected interest is heightened when it is an attorney advocating for a client's best interest. *See Waldinger Corp. v. CRS Grp. Eng'rs, Inc., Clark Dietz Div.*, 775 F.2d 781, 789 (7th Cir. 1985) (recognizing that "[t]he fiduciary duty owed by an attorney to his client is" an interest "considered to be of equal or greater value than that accorded the contractual rights involved" in tortious interference cases). Therefore, where an attorney takes actions to further their client's best interest regarding a contract in which the client holds "any beneficial or economic interest," a claim of tortious interference does not lie. *See id.* at 789–90. For these reasons, Big Ligas has not stated a claim for tortious interference, and Big Ligas has failed to show clear error.

### B. False Advertising

Big Ligas has not shown clear error to warrant the reconsideration of the Court's dismissal of Count II. The Court previously held that Big Ligas failed to allege that Ms. Yu's statements were "false or misleading" under the Lanham Act. (ECF No. 46 at 8–9.) In the instant motion, Big Ligas rehashes much of the same arguments and strenuously argues that the Court failed to take its well-

pled allegations as true. (ECF No. 48 at 10–13.) "Such disagreement with the Court's decision . . . does not amount to clear error." *See Caron v. NCL (Bahamas) Ltd.*, No. 16-23065-Civ-Scola, 2017 WL 7796727, at *1 (S.D. Fla. June 8, 2017) (Scola, J.). This cannot provide a basis for reconsideration.

While Big Ligas's failure to introduce new arguments is fatal, the Court will briefly walk through its reasoning. Big Ligas alleges that Ms. Yu represented herself to be Londra's attorney—which is a true statement—but also that Ms. Yu misrepresented the scope of her authority. (ECF No. 48 at 11.) Taking the Plaintiff's well-pled allegations as true, the Court held that those statements, which may have conflicted with the Deal Memorandum and related agreements, were made within Ms. Yu's representation of and advocacy for her client and that such statements were not actionable under the Lanham Act. (ECF No. 46 at 9.)

Big Ligas conjures two hypothetical examples in an attempt to grapple with the principles at issue. (ECF No. 48 at 12–13.) But the Court is not giving a green light to attorneys everywhere to lie and cheat on behalf of clients. But when an attorney—for the financial benefit of a client—discusses their client and makes representations concerning the scope of their relationship, all while negotiating with another party, that is not a false or misleading "commercial advertisement or promotion" within the meaning of 15 U.S.C. § 1125(a)(1). *See Wyndham Vacation Ownership, Inc. v. US Consumer Attys., P.A.*, No. 18-81251-Civ, 2019 WL 7837887, at *9 (S.D. Fla. July 3, 2019) (Reinhart, Maj. J.); *see also VG Innovations, Inc. v. Minsurg Corp.*, No. 8:10-cv-1726-T-33MAP, 2011 WL 1466181, at *5 (M.D. Fla. Apr. 18, 2011).

As the Court previously held, Big Ligas did not allege actionable false or misleading advertising under the Lanham Act. While the Court did not previously address every element of what constitutes false or misleading advertising under the Lanham Act, courts look to whether a statement is "(1) commercial speech; (2) by a defendant who is in commercial competition with the plaintiff; (3) for the purpose of influencing consumers to buy's goods or services." *Wyndham*, 2019 WL 7837887, at *9. Moreover, the statement must be "disseminated sufficiently to the relevant purchasing public." *VG Innovations,* 2011 WL 1466181, at *5.

Ms. Yu had discussions with two third parties and allegedly misrepresented the scope of her relationship to Londra, as measured by the Deal Memo. (ECF No. 11 at ¶¶ 44–45.) These statements were not false "commercial speech" within the Lanham Act, which looks to speech "related solely to the economic interests of the speaker and its audience," such that it "proposes a commercial transaction." *Edward Lewis Tobinick, MD v. Novella*, 848 F.3d 935, 950 (11th Cir. 2017). Rather, the Defendant's discussions were

in pursuit of her client's pecuniary interests and the negotiation of a commercial transaction for her client, not herself. (*See* ECF No. 11 at ¶ 40). Moreover, the Plaintiff failed to allege any facts regarding the size of the market and whether discussions with two entities constitute sufficient dissemination to consumers. *See VG Innovations*, 2011 WL 1466181, at *5; (ECF No. 17 at 20).

The above is the long-winded way of saying that Ms. Yu did not violate the Lanham Act and commit false advertising when she truthfully represented herself as a lawyer for her client and proceeded to negotiate with a third party, for the benefit of her client.[1] To the extent that Big Ligas is concerned that this holding will empower attorneys and their clients to sell property that their clients do not own, the Plaintiff did not cite to any case where that fact pattern constituted a violation of the Lanham Act. There very well may be other causes of action for such conduct, but the Lanham Act is not a catch-all for every purported misrepresentation, particularly those made by a lawyer representing a client in a commercial negotiation. For these reasons, Big Ligas has not stated a claim for false advertising, and the Plaintiff has failed to show clear error.

### C. Trademark Infringement

Last, Big Ligas has not uncovered clear error that warrants reconsideration as to the Court's holding that the Plaintiff did not state a claim for trademark infringement. (ECF No. 46.) The Court previously held that (1) Big Ligas failed to adequately allege an unauthorized "use" of the mark at issue ("Paulo Londra") and (2) even if Big Ligas did, such use was protected by the fair-use doctrine. Big Ligas brings forward no new facts or arguments, only a vigorous disagreement with the Court's conclusion. As above, this is insufficient under Rule 59(e).

Big Ligas alleged that Ms. Yu used the name "Paulo Londra" to "promote [Paulo Londra's] recording services"—such an allegation is unsurprising given

---

[1] The Court further notes that Big Ligas's claim for false advertising under the Lanham Act depends on the interpretation of the Deal Memo. The Court does not believe that the Lanham Act is the appropriate vehicle to attack false statements where the falsity of those statements is measured against the interpretation of a contract between the parties (or their agents). *See G&F Licensing Corp. v. Field & Stream Licenses Co., LLC*, No. 09 Civ 10197(LTS)(GWG), 2010 WL 2900203, at *5–6 (S.D.N.Y. July 16, 2010) (dismissing a claim for false advertising where "the significance of these allegations turns entirely upon the resolution of the underlying contract dispute" and holding that the "dispute should be determined by principles of contract law, as it is the contract that defines the parties' relationship and provides mechanisms to redress alleged breaches thereto. The Lanham Act, in contrast, establishes marketplaces rules governing the conduct of parties not otherwise limited") (quoting *Silverstar Enters., Inc. v. Aday*, 537 F. Supp. 236, 242 (S.D.N.Y. 1982)).

that Londra was Ms. Yu's client, who hired Ms. Yu to act on his behalf and for his benefit. (ECF No. 11 ¶¶ 40, 45, 84.)

In any event, the use of the mark "Paulo Londra" here was protected under the fair-use doctrine. The fair-use doctrine provides a defense to infringement if the term is used "(1) other than as a mark, (2) in a descriptive sense, and (3) in good faith." *Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1363 (11th Cir. 2019) (quoting *Int'l Stamp Art, Inc. v. U.S. Postal Serv.*, 456 F.3d 1270, 1274 (11th Cir. 2006)). Fair use protects against overzealous trademark registrants and forbids trademark owners from "prevent[ing] others from accurately describing a characteristic of their goods." *Id.*

Big Ligas argues that the Court improperly made a finding of fact when it held that Ms. Yu's use of the name "Paulo Londra" was undertaken in good faith. (ECF No. 48 at 18–19.) Not so. Assuming as true the Plaintiff's well-pled, non-conclusory allegations, Big Ligas does not allege facts "from which any inference of bad faith can be drawn[.]" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 612 (6th Cir. 2009); *see also Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) ("A complaint may be dismissed if an affirmative defense . . . appears on the face of the complaint."). Rather, Ms. Yu's use of the term "Paulo Londra" was in service of her obligations to her client, Paulo Londra, in order to "negotiate and act on behalf of Paulo with respect to his recording artist and songwriting services." (ECF No. 11 ¶¶ 39, 49.) For these reasons, Big Ligas has not stated a claim for trademark infringement, and the Plaintiff has failed to show clear error.

### 4. Leave to Amend

If the Court denies the motion to alter or amend, Big Ligas requested leave to file a second amended complaint. (ECF No. 48 at 19–20.) The Plaintiff cites only to Federal Rule of Civil Procedure 15(a) as the basis to grant leave to amend. (*Id.*) However, the Court previously entered a scheduling order in this matter, setting a deadline to file amended pleadings on January 13, 2021. (ECF No. 14.) Therefore, Big Ligas must satisfy Rule 16(b)(4). *See* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."); *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998) (holding that to consider "only Rule 15(a) without regard to Rule 16(b) . . . would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure"). Only once Rule 16(b)(4) has been met will courts turn to the liberal amending standard of Rule 15(a)(2). *See Insight Sec., Inc. v. Deutsche Bank Trust Co. Ams.*, No. 20-23864-Civ-Scola, 2021 WL 1750083, at *2 (S.D. Fla.

May 4, 2021) (Scola, J.). The "good cause" standard of Rule 16(b)(4) requires a showing that the schedule "cannot be met despite the diligence of the party seeking the extension." *Sosa*, 133 F.3d at 1418 (internal quotations omitted).

Big Ligas has not raised any facts that prevented it from seeking leave to amend within the deadline imposed by the Scheduling Order or any other facts as to why that deadline should be modified. Indeed, Ms. Yu filed the motion to dismiss (ECF No. 17) on December 14, 2020; Big Ligas had time to assess the motion and decide whether it wanted to file a second amended complaint or stand on its pleadings. Big Ligas chose not to amend. This was a tactical decision, and the Plaintiff does not create good cause to change the deadline to amend because it chose to oppose the motion to dismiss.

In any event, amendment would be futile. *See Jemison v. Mitchell*, 380 F. App'x 904, 907 (11th Cir. 2010) ("Dismissal with prejudice is proper . . . if a more carefully drafted complaint could not state a valid claim."). As to Count 1, the Plaintiff's proposed second amended complaint (ECF No. 48 Ex. A) adds additional detail concerning contractual language that the Court already considered in the motion to dismiss. (*See* ECF No. 46 n.1.) The relevant amendments to Counts 2 and 3 do not fare better; the second amended complaint adds little facts relevant to the Lanham Act counts, and most of the proposed amendments are merely legal citations that were already included in the Plaintiff's briefing. *See Chevy Chase Bank, F.S.B. v. Carrington*, No. 6:09-cv-2132-Orl-31GJK, 2010 WL 745771, at *4 (M.D. Fla. Mar. 1, 2010) (noting that "lengthy legal arguments, case citations, and quotations from treatises . . . [are] proper in legal memorandum, but almost never proper in a complaint.") (cleaned up). For these reasons, Big Ligas has not met its burden to justify leave to amend.

### 5. Conclusion

In total, the Court **denies** the Plaintiff's Motion to Alter or Amend Judgment and **denies** leave to amend (**ECF No. 48**).

**Done and ordered** at Miami, Florida on September 3, 2021.

Robert N. Scola, Jr.
United States District Judge